UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIMITRI PATTERSON,

    Plaintiff,

    v.

SCOTT HARRIS, *et al.*,

    Defendants.

Civil Action No. 19-897 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff and former NFL cornerback Dimitri Patterson is currently detained at the Turner Guilford Knight Correctional Center in Miami-Dade County. In the hopes of procuring his release, he has besieged various courts (including the U.S. Supreme Court) with myriad legal filings. In this action, he sues judges in those courts and their clerks for not docketing his briefs or granting him relief. He also names the Department of Justice as having violated his rights by arresting him. He seeks $10 million in damages and prays to have a variety of court actions enjoined or compelled. Defendants have now filed a Motion to Dismiss, contending that this Court lacks subject-matter jurisdiction over some of his counts and that he has not stated a claim as to others. Concluding that Defendants are protected under judicial and sovereign immunity and that Plaintiff has failed to properly articulate any cognizable claim, the Court will grant the Motion and dismiss the case.

I.     Background

Although not always clear, Plaintiff's prolix Complaint catalogs an extensive and varied list of grievances he claims to have suffered at the hands of federal judges, court clerks, and DOJ. The Court offers a brief summary of the 83-page pleading.

1

Throughout late 2017 and early 2018, Plaintiff repeatedly contacted DOJ by phone and mail to complain of "conspiracies to deprive him of his constitutional rights and intentional tortious acts committed against him by the municipalit[y] of Miami-Dade County." ECF No. 12 (Am. Compl.), ¶¶ 23–26, 28, 30–36. He was told that his case had been entered but would not be addressed for at least 120 days. Id., ¶ 33.

Patterson alleges that on May 7, 2018, he was stopped by "two non-uniformed U.S. Marshals and eight non-uniformed Orange County Florida Police Officers" inside the Orlando Waldorf Astoria Hotel pool bathroom. Id., ¶ 44. He and his girlfriend, Kathy Thabet, repeatedly requested to see a warrant and badge identification but claim neither was ever presented. Id., ¶¶ 44, 48–49, 51. Plaintiff was subsequently arrested and taken to the Orange County Jail, where he was "illegally detain[ed] on a 'no bond' hold without the legal chain of documentation." Id., ¶ 53. On May 9, Miami-Dade County Correctional Officers then transported him to the Turner Guildford Knight Correctional Center, where he was detained in "24-hour solitary confinement in the psych ward for three days." Id., ¶¶ 55–56.

Five months later, on October 23, 2018, Plaintiff alleges that he was once again arrested (for an unspecified charge) "without a valid warrant" by Orange County Police Department officers at a gas station. Id., ¶¶ 61–64. On December 27, after legal proceedings not clearly described in his Complaint, he was sentenced to 120 days' imprisonment for "Direct Criminal Contempt." Id., ¶ 66. As of today, he remains detained at Turner Guilford Knight Correctional Center, although he does not explain why. Id., ¶ 169.

While his direct criminal proceeding may have ended, his legal journey was just beginning. On both February 1 and February 12, 2019, Plaintiff's mother filed Emergency Petitions for Writs of Habeas Corpus to the Eleventh Circuit. Id., ¶¶ 73, 77. On both occasions,

2

Eleventh Circuit Judge Robin S. Rosenbaum transferred the petition to the Southern District of Florida. Id., ¶¶ 76, 80–82. On February 25, Plaintiff's mother filed another Petition for Writ of Habeas Corpus to the Eleventh Circuit in person, but the clerk's office refused to receive or file it. Id., ¶¶ 83–88. She also filed an Emergency Motion for Preliminary Injunction on May 28, 2019, which Judge Robert N. Scola, Jr. of the United States District Court for the Southern District of Florida denied. Id., ¶¶ 142, 152.

Moving up the ladder, she also filed a Petition for Writ of Habeas Corpus with the U.S. Supreme Court on February 8, 2019. Id., ¶ 90. After failing to receive any information regarding the processing and docketing of her petition on behalf of her son, she filed a second petition on February 14. Id., ¶¶ 92–96. The petition was returned four days later for defects in filing. Id., ¶ 98. She repeated the process on February 28, achieving no greater success. Id., ¶¶ 102–05. On March 14, she filed a fourth Petition for Writ of Habeas Corpus along with Petitions for Writs of Certiorari and Mandamus. Id., ¶ 106. The petitions, again, were returned for defects in filing. Id., ¶¶ 109–15. She tried again on March 29, but to no avail. Id., ¶¶ 117–24.

Plaintiff has also filed a total of eleven civil actions in the United States District Court for the Middle District of Florida. Id., ¶ 136. On May 3, 2019, for instance, he initiated a defamation suit against the Miami Herald Media Company there, which Middle District Judge John E. Steele then transferred to the Southern District of Florida. Id., ¶¶ 137–41.

Dissatisfied with his treatment by the assorted Judges and Clerks and by DOJ, Plaintiff now brings this suit, which contains multiple constitutional and tort claims against U.S. Supreme Court clerks for refusing to file his petitions, other federal clerks and judges for refusing to file and hear his petitions and transferring his cases, as well as DOJ for neglecting to address his civil-rights complaints and for the tortious acts committed by U.S. Marshals. He lists myriad

3

Fourth and Fifth Amendment violations, statutory violations, common-law torts, and Bivens counts. As relief, Plaintiff contends that he is entitled to damages in the form of $10 million. Id., ¶ 433. He further requests a permanent injunction "enjoining and restraining all Defendants named in this complaint." Id., ¶ 434. Defendants now move to dismiss the Complaint in its entirety.

II.     **Legal Standard**

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Sparrow, 216 F.3d at 1113.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference "unsupported by the facts set out in the [C]omplaint." Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint

4

"must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject–matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "For this reason, 'the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id., at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alterations omitted).

### III. Analysis

In considering Defendants' Motion to Dismiss, the Court begins with the counts asserted against the Judges and the Clerks. It will then analyze those against DOJ.

#### A. Judges and Clerks

As Patterson seeks both damages and injunctive relief, this section will examine the two remedies separately.

##### 1. *Damages*

Plaintiff prays for damages from the Judges for adverse rulings and for transferring his civil suits to different courts. More specifically, he complains that Judge Steele "intentionally obstruct[ed] his federal defamation lawsuit," Am. Compl., ¶ 371, by ordering his Clerk to transfer one of Plaintiff's cases from the Middle District of Florida to the Southern District of Florida. Id., ¶ 138. Judge Scola is included for "refusing to grant the Plaintiff's Emergency Motion for Preliminary Injunction." Id., ¶ 392. Meanwhile, Judge Rosenbaum "intentionally

5

obstruct[ed] the Plaintiff's Habeas Corpus proceedings," id., ¶ 413, by "direct[ing] the Clerk to transfer the Petition for Habeas Corpus . . . to the United States District Court [for the] Southern District of Florida . . . [and] to refuse future filings by the Petitioner[.]" Id., ¶ 88.

If judges could be personally sued by disappointed litigants, the bench would quickly empty out. This is not the case, of course, because judges are protected by absolute immunity from suit by litigants seeking to recover damages from judicial acts within the judge's jurisdiction, as is the case here. See Sindram v. Suda, 986 F. 2d 1459, 1460 (D.C. Cir. 1993) (per curiam); see also Stump v. Sparkman, 435 U.S. 349, 359 (1978). "There are two exceptions to immunity: (1) 'a judge is not immune from liability for nonjudicial actions'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction'." Reddy v. O'Connor, 520 F. Supp. 2d 124, 130 (D.D.C. 2007) (quoting Mireles v. Waco, 502 U.S. 9, 11–12 (1991)). An act is judicial in nature if it relates to the function normally performed by a judge. Reddy, 520 F. Supp. 2d at 130. Acts that are administrative or legislative, for example, are not judicial acts and are not covered by judicial immunity. Id.; see also Forrester v. White, 484 U.S. 219, 229–30 (1988).

In this instance, all acts complained of were judicial in nature because they were part of the normal function of a judge in deciding matters before her. Transferring cases and denying motions are commonplace components of a judge's job. See Sibley v. U.S. Supreme Court, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (finding that allegedly dismissing prior case and refusing to timely rule on motion judicial in nature); see also Reddy, 520 F. Supp. 2d at 131 (finding that Supreme Court justices "'have absolute immunity in exercising their judicial authority' in deciding the matters pending before them") (quoting Moore v. Burger, 655 F.2d 1265, 1266 (D.C. Cir. 1981)); cf. Forrester, 484 U.S. at 229–230 (finding that firing court

employee was administrative act, not judicial, and therefore judicial immunity did not apply). Indeed, Plaintiff's grievances are the very type that immunity specifically covers — those of a dissatisfied litigant frustrated by an adverse decision in his underlying case. See Forrester, 484 U.S. at 226–27 (explaining that judicial immunity is necessary to cover situation incurred by adjudicative function's nature to frequently disappoint desires of litigants).

Plaintiff also seeks damages against the Clerks for procedural actions taken in his multiple civil suits. Generally, he contests their refusal to file, docket, and submit to judges various civil filings and writs of habeas corpus. See, e.g., Am. Compl., ¶¶ 76, 78, 80, 83–84, 88, 110–17, 137. Judicial immunity, however, "extends to court clerks who perform 'tasks that are an integral part of the judicial process.'" Sibley, 786 F. Supp. 2d at 344 (quoting Sindram, 986 F.2d at 1460–61). This extension of judicial immunity is designed to protect against the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, would vent their wrath on clerks, court reporters, and other judicial adjuncts." Sindram, 986 F.2d at 1461 (alteration omitted) (quoting Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989)).

Here, the Court faces the exact circumstance addressed by Sindram, where an unhappy litigant has vented his wrath on the Clerks. See 986 F.2d at 1461. Filing and docketing cases, and the refusal to do so, are "part and parcel of the process of adjudicating cases." Sibley, 786 F. Supp. 2d at 344 (finding that clerks' failure to file pleadings and refusal to correct docketing error are parts of adjudicative process and thus covered under judicial immunity). Judicial immunity, therefore, extends to the Clerks as well here.

### 2. *Injunctive Relief*

Not satisfied with damages alone, Plaintiff also seeks "permanent preliminary injunctive relief enjoining and restraining all Defendants named in this complaint." Am. Compl., ¶ 434. Such relief would seem to entail this Court's compelling the Judges to adjudicate his filings and the Clerks to file and docket his petitions and other filings. This Court, however, "is not a reviewing court and cannot compel . . . other Article III judges in . . . other districts or circuits to act." Sibley, 786 F. Supp. 2d at 345. Likewise, it cannot mandate that a clerk of the Supreme Court, In re Marin, 956 F.2d 339, 340 (D.C. Cir. 1992) (per curiam), or a clerk in a different federal district act, as it lacks the supervisory authority of another court's personnel. See Sibley, 786 F. Supp. 2d at 345. Put another way, this Court has no subject-matter jurisdiction to force these Defendants to perform roles related to their official duties. See Sanders v. United States, 184 F. App'x 13, 14 (D.C. Cir. 2006) (holding that district court "lack[s] jurisdiction to review decisions" of a U.S. Court of Appeals); Reddy, 520 F. Supp. 2d at 132 ("[T]h[is] Court plainly lacks jurisdiction to compel official action by the U.S. Supreme Court Justices or their staff.").

The Court, therefore, will grant Defendants' Motion and dismiss Plaintiff's claims for injunctive relief for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and his claims for damages as failing to state a claim under Rule 12(b)(6).

### B. DOJ

Moving to his next target, Plaintiff seeks damages from DOJ for "deliberate indifference, willful obstruction of his civil rights complaint, and violating his procedural due process," Am. Compl., ¶ 35, by its purported refusal to address his complaint about conspiracies to deprive him of his constitutional rights and intentional tortious acts committed against him by Miami-Dade

County. Id., ¶¶ 23, 25–26, 30–36. These allegations are labeled as Bivens claims, other torts, and conceivably habeas. The analysis follows this tripartite division.

1. Bivens

Plaintiff brings a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), asserting that DOJ violated his constitutional rights and conspired to deprive him of these rights. See Am. Compl., ¶¶ 172–85. Bivens establishes a private cause of action for damages against individual federal officers who commit constitutional violations. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). It does not, however, extend to federal agencies. See FDIC v. Meyer, 510 U.S. 471, 486 (1994) (declining to extend Bivens to federal agencies); Iqbal, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Although Plaintiff's *pro se* status requires that his Complaint be "liberally construed" and "held to less stringent standards that formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks omitted), "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" Atherton v. D.C. Office of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 678–79). While Plaintiff does generally refer to actions taken by unnamed U.S. Marshals, see Am. Compl., ¶¶ 44–50, he asserts this claim only against DOJ. Id., ¶ 15. It is therefore not cognizable under Bivens. See Phillips v. Fed. Bureau of Prisons, 271 F. Supp. 2d 97, 101 (D.D.C. 2003) (Bivens claim cannot proceed where plaintiff failed to "name any BOP employee as a defendant"); cf. Bond v. U.S. Dept. of Justice, 828 F. Supp. 2d 60, 76 (D.D.C. 2011) (inferring intent to sue DOJ officials in their individual capacities from plaintiff's naming

9

of officials and invocation of Bivens). At this point, therefore, all Bivens counts come up short. For the same reason, Plaintiff has not sufficiently alleged a claim against state officers under 42 U.S.C. § 1983.

### 2. *Other Torts*

Plaintiff also asserts counts against DOJ for Fourth and Fifth Amendment violations, violation of 42 U.S.C. § 1986, and invasion of privacy. They founder for a different reason. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011). It shields "the federal government, its agencies, and federal officials acting in their official capacities." Am. Rd. & Transp. Builders Ass'n v. EPA, 865 F. Supp. 2d 72, 79 (D.D.C. 2012), aff'd, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013). Unless DOJ waives its sovereign immunity or an exception applies, damages suits cannot prevail. See Flaherty v. Ross, 373 F. Supp. 3d 97, 103–04, 110 (D.D.C. 2019) (finding lack of subject-matter jurisdiction when federal agency was protected by sovereign immunity).

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), may provide such a waiver. Under the FTCA, however, a plaintiff must "have exhausted his administrative remedy before filing suit." Benoit v. U.S. Dept. of Agric., 608 F.3d 17, 20 (D.C. Cir. 2010) (citations omitted); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). To exhaust his administrative remedies, Patterson had to first file a "written statement sufficiently describing the injury to enable the agency to begin its own investigation, and . . . a sum-certain damages claim" to DOJ and have his claim finally denied by DOJ in writing. Hoffman v. District of Columbia, 643 F. Supp. 2d 132 (D.D.C. 2009) (omission in original) (quoting GAF

Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987)); see also 28 U.S.C. § 2675(a). There is no allegation, either in his Amended Complaint or in his Opposition to Defendants' Motion to Dismiss, that Plaintiff has taken any such steps. This alone requires dismissal for lack of jurisdiction. See McNeil, 508 U.S. at 113 (upholding district court's dismissal of unexhausted FTCA claim for lack of jurisdiction).

Even if Plaintiff had exhausted all administrative proceedings, however, the FTCA does not waive sovereign immunity to constitutional torts. See Epps v. U.S. Att'y Gen., 575 F. Supp. 2d 232, 238 (citing Meyer, 510 U.S. at 477–78). Patterson's claims under the Fourth and Fifth Amendments, therefore, still would not survive. Id. (court lacks jurisdiction over constitutional-tort claims brought under FTCA).

Similarly, his count under 42 U.S.C. § 1986 is not sufficiently pled. This section "imposes civil liability on anyone who knowingly fails to prevent the commission of a conspiracy prohibited by § 1985. Thus, . . . [a] plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986." Moore v. Castro, 192 F. Supp. 3d 18, 35 (D.D.C. 2016). As Plaintiff here has not brought any claim under § 1985, he cannot proceed under § 1986 either.

   3. *Habeas Corpus*

Patterson also appears to pursue habeas-corpus relief. See Am. Compl., ¶ 132 ("Plaintiff is currently being unlawfully detained"); id., ¶¶ 169, 183 (same). Yet, "a district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction" and the defendant is his "'immediate custodian' — that is, the warden of the [] facility in which he [is] incarcerated." Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239, 1239 n.* (D.C. Cir. 2004); see Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("jurisdiction [for habeas petitions] lies in only one district: the district of confinement"). As

Patterson is incarcerated in Florida, this Court lacks jurisdiction. This jurisdictional problem appears to have recurred in the other courts in which Patterson and his mother have attempted to file habeas petitions. As these courts have attempted to make clear, Plaintiff must file any suit protesting conditions of confinement in the Southern District of Florida (his location of confinement) naming the Turner Guilford Knight Correctional Center warden as the defendant. See Stokes, 374 F.3d at 1238–83 (citing 28 U.S.C. § 2241(a)) (dismissing habeas petition because prisoner confined in Ohio did not file petition in Northern District of Ohio, naming Northeast Ohio Correctional Center warden as respondent).

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 8, 2019